IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER V. LANGONE,<br><br>Plaintiff,<br><br>v.<br><br>PATRICK KAISER and FAN DUEL INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 12 C 2073<br><br>Chicago, Illinois<br>June 13, 2013<br>9:16 a.m. |

TRANSCRIPT OF PROCEEDINGS - Motion Hearing
BEFORE THE HONORABLE THOMAS M. DURKIN

APPEARANCES:

For the Plaintiff: LAVERY LAW FIRM LLC by
MR. MARK T. LAVERY
180 North LaSalle Street
Suite 3700
Chicago, Illinois 60601

For the Defendants: ZWILLGEN PLLC by
MR. BART F. HUFF
300 North LaSalle Street
49th Floor
Chicago, Illinois 60654

Court Reporter: LAURA R. RENKE, CSR, RDR, CRR
Official Court Reporter
219 S. Dearborn Street, Room 1728
Chicago, Illinois 60604
312.435.6053
laura_renke@ilnd.uscourts.gov

(In open court.)

THE COURT: Okay.

THE CLERK: 12 C 2073, Langone v. Kaiser.

MR. HUFF: Good morning, your Honor. Bart Huff on behalf of the defendants.

THE COURT: Good morning.

MR. LAVERY: Good morning, your Honor. Mark Lavery for Christopher Langone.

THE COURT: Good morning.

I apologize in advance -- well, not in advance. I apologize directly right now. You don't have a decision from me, obviously. And that has caused Mr. Lavery to ask for a partial lift of the discovery stay.

I noted in reading that that you weren't able to reach an agreement on that. Is that true?

MR. LAVERY: Yes.

MR. HUFF: Judge, could I give you a little background on that?

THE COURT: Sure. You both can. But go ahead first, Mr. Huff.

MR. HUFF: A couple of weeks ago, Mr. Lavery contacted me and said, you know, because we haven't gotten a ruling yet, he would like to cut a subpoena to this one entity.

THE COURT: Sure.

MR. HUFF: We thereafter had a conversation. And

during that conversation, two topics came up: one, this subpoena, and a second, was there any possibility of settlement.

So I went back to my clients and I talked to them about that.

And during that initial conversation, I suggested to Mr. Lavery I don't think -- his concern was that the company might purge the records or go out of business or something and he wouldn't be able to get them.

I said I don't think you need to cut the subpoena in order to do that. Just send them a preservation request. I'll even try and get you a contact to do that. That deals with your concern.

He said that he would, you know, consider that; it sounded reasonable. But we also were having settlement conversations.

Early this week, on Monday afternoon, I sent Mr. Lavery an e-mail saying I don't think that settlement prior to the disposition of the motion to dismiss is going to happen. It just -- things are sticky, and I don't want to go into all of that.

THE COURT: All right.

MR. HUFF: But I said, you know what? I'll still try and get you the contact for the preservation request.

And what I got back was an e-mail saying, well, I

don't think we can come to any agreement. We're going to file our discovery motion.

THE COURT: Okay.

MR. HUFF: I thought we had come to some accord on how we were going to deal with the topic today. And that seems to still make much more sense -- and I can go into the reasons if you care to hear me on it why it makes more sense to have a preservation, a lit hold on these records, as opposed to a subpoena and production of the records at this point.

THE COURT: Well, Mr. Huff, do you represent the parties that Mr. Lavery wants to subpoena?

MR. HUFF: No.

THE COURT: Okay. Okay.

Well, Mr. Lavery, let's hear from you.

MR. LAVERY: Yes, your Honor. My concern was just we had talked about this last time when we were before you, as you may recall. I was concerned that this site -- and I mentioned it on the record -- might go out of business. They're one of the smaller sites. They're a small operation and -- but they're very important to our case.

But there's been a number of sites that are going out of business now. You know, they try it and they find out they can't make it or whatever because there's Fan Duel who dominates the market.

So this is not Fan Duel. And so this is sort of the

one piece of the puzzle that we need to preserve.

And so I called Mr. -- I sort of had it on my tickler that -- you know, I understood that obviously you inherited many, many cases, and it may take up to six months or whatever it is. So I said, well, I don't think we can wait any more because it's been eleven months, which is an unusual amount of time.

And then in response to that, Mr. Huff brought up settlement. I wasn't calling about settlement. He asked me to talk to my client --

THE COURT: I'm glad anytime the both of you talk you talk about settlement.

MR. LAVERY: Sure, right, no. And I called my client. My client authorized an offer; we made an offer.

But I made it clear to Mr. Huff that my main concern was I wasn't calling about settlement or anything else.

THE COURT: All right.

MR. LAVERY: I just want to get the information from this site.

We did talk about a preservation agreement because we had entered into preservation agreements prior in our poker cases. But in that case, we had the DOJ's assistance because at the time we had our preservation agreement, we had a stay of discovery pending the ruling. The DOJ had frozen all their assets for the sites that we wanted information from, and they

had also made an agreement with the DOJ as part of the settlement allowing some monies to be released that they would preserve all the records.

THE COURT: Okay.

MR. LAVERY: So we felt pretty safe to do a preservation agreement in that case.

We don't have that here. The DOJ is not involved yet. They may be at some point with this industry as it was with poker, but right now they don't.

So we thought -- and plus it's so simple. It's basically just the account information from this guy, one guy, Patrick Kaiser. We also think getting his PayPal stuff may be good, but PayPal does have a longer period, a record retention period, and we'll admit that. We just thought it would be good to get now. Why not?

But we're willing to limit it just to account information from Fantasy Sports Live for Patrick Kaiser. And, you know, we don't think that that's onerous. There's no burden on the defendant. And we think it would be easier than actually trying to negotiate a preservation agreement with the principals of Fantasy Sports Live.

I was willing to give him a shot at it, but because he didn't come up with it and just said, well, I don't have a counteroffer for you, and I don't have a contact for you, I just thought the best thing to do was move it forward and get

this --

THE COURT: Well, I appreciate, Mr. -- well, go ahead.

MR. HUFF: Here's why I think it doesn't make sense to lift the stay, as opposed to having the records preserved.

THE COURT: All right.

MR. HUFF: There was a reason the stay was put in place, and that is that this is a very unusual case. It may be completely disposed of by the motion to dismiss.

And part of our argument is that he hasn't alleged the facts necessary to seek reimbursement on behalf of these people. And so he's trying to flip it. He's trying to get the information first before he has alleged what he needs to in the complaint.

He can have the records preserved. We don't have to worry about his concern at that point. But he shouldn't get the fishing expedition before he has stated the cause of action.

THE COURT: Well, we have an unusual set of facts here, though, even though there's a strong motion to dismiss. I'm not telling you which way it's going because I'm not sure. But certainly it's not a frivolous motion to dismiss.

On the other hand, you were both caught in the gears of a reassigned case that's been with -- for reasons that will bore you, but the bottom line is you don't have a decision yet.

And I don't view it as a fishing expedition if there's

a good-faith belief that certain records that if a motion to dismiss is denied may not exist after that. PayPal is a well-known, legitimate company who has, I'm sure, a very strong document retention policy and is not likely -- certainly is unlikely to go out of business during the pendency of waiting for a decision from the Court.

I don't know anything about -- well, your motion calls it Fantasy Day Sports. Is that the same name as the entity --

MR. LAVERY: That's the corporate name.

THE COURT: Okay.

MR. LAVERY: Correct. That's the entity. Their website is Fantasy Sports Live.

THE COURT: Okay. I don't know anything about that entity. And I'll take Mr. Lavery's representation, because you're familiar with this industry, that that particular company, there's no reason to believe it's got a strong financial presence. They may, but there's no reason to think that they may be here.

And I don't want the records that -- which seem very -- frankly, very innocuous. But I don't want records that may end up being central to the plaintiff's case to be lost because of a -- the pendency of a motion to dismiss.

So I'm going to allow the granting -- the partial lifting of the stay to allow you to issue subpoenas to Fantasy Day Sports or whatever the corporate entity name is for the

limited information you represented today, the corporate --

Well, tell me again. Put on the record exactly what your subpoena is going to say.

MR. LAVERY: It will be the account information. It will be the transaction history of the financial transactions between them.

THE COURT: Between Mr. Kaiser and them. Is that correct?

MR. LAVERY: Yes.

THE COURT: All right.

MR. LAVERY: Yes.

THE COURT: And for what period of time?

MR. LAVERY: Back to two and a half years before the filing of the complaint.

THE COURT: All right.

MR. LAVERY: Which I think is his entire history.

THE COURT: And what's the statute of limitations on this particular statute, if you know?

MR. LAVERY: It's -- it's six months, of course, because, you know, the loser has the six months.

THE COURT: Right.

MR. LAVERY: And then it's two years as -- a two-year general any kind of statutory penalty --

THE COURT: All right.

MR. LAVERY: -- under Illinois law.

THE COURT: Well, knowing how I've ruled, Mr. Huff, any objection to that scope?

MR. HUFF: Not exactly -- well, it depends on -- I guess I don't want to waive the objection that I think that some of that very well may be irrelevant even if the case goes forward depending on how you rule on the motion to dismiss.

THE COURT: The amount of material that is obtained by way of subpoena that's irrelevant in federal court and state court litigation greatly outweighs what ends up being relevant. But it's still something that I'm not in a position to determine relevancy at this point, nor probably are you.

And I think Mr. Lavery has a point here, and I'm going to allow issuance of a subpoena with the limits that you've put on the record.

MR. LAVERY: Yes.

THE COURT: And obviously turn that same information over to Mr. Huff when you get it --

MR. LAVERY: Okay.

THE COURT: -- so you both have access to it.

MR. HUFF: Two things, Judge.

THE COURT: Go ahead.

MR. HUFF: Could I get this subpoena prior to it being issued so that I can see that it's --

THE COURT: That's fine. That's reasonable.

MR. HUFF: -- it comports?

THE COURT: I mean, but I will tell you if it is of the same ilk as described, there's no point coming back here to object to it.

MR. HUFF: Understood.

THE COURT: But if you want to see it in advance, I have no problem with that.

MR. LAVERY: I mean, I can tell you, for the record, I'll be asking for -- you know, in the standard form, in the fill-in-the-blank area, you know, it will say all documents, records, ESI that relate to kaiseroll13 or Patrick Kaiser, account information and transaction history since date --

THE COURT: Yeah. No, that's how I envisioned what it would look like.

Mr. Huff, a second point?

MR. HUFF: Again, given that I think a preservation request would be more appropriate in this case, what about a long return date? Then they will be under court order to produce the records, but they don't necessarily get turned over. It would give you some time to potentially rule on the motion to dismiss without, as I -- I totally view it as a fishing expedition to try and get more information.

He's also got two other cases in state court up now on --

THE COURT: Well, one, he can't -- I don't know if there's a protective order in the case, but the information

you're obtaining is for this case.

MR. LAVERY: Yes.

THE COURT: Not for your state court case.

MR. LAVERY: Of course.

THE COURT: Two, the motion to dismiss is -- as I recall from the argument, it's either going to be granted or denied not based on information he gets from the subpoena. It's going to be based on whether the legal theory is a proper legal theory to advance the cause of action he's claiming.

It's not going to matter what he picks up on how I rule. And it shouldn't. I don't believe it will. And I -- my recollection of what the motion to dismiss looked like, this won't make any difference. So I'm not going to put an unreasonable -- put a long return date. You know, give them 30 days or whatever the standard time is.

But unless I'm mistaken, I don't think what he gets is going to make any difference to the way I rule in the case.

MR. HUFF: I don't think it will make a difference on how you rule.

If you rule in a certain way and allow him to then try to amend to solve it, I think it then could have an impact.

THE COURT: All right. Well --

MR. HUFF: Because, for example --

THE COURT: Go ahead.

MR. HUFF: -- if you say you actually have to name the

losers on whose behalf you are seeking recovery --

THE COURT: Right.

MR. HUFF: -- and then he subpoenas these records, he then could at least potentially have the names of some losers that he's seeking.

THE COURT: Right. But if that's my ruling, I'd likely allow him to get that limited discovery anyway because the mere fact that it's in someone else's hands but it exists, I'd grant that request to lift the stay for discovery at that point.

Discovery normally is not stayed during the pendency of a motion to dismiss, so it's an extraordinary restriction on him per the normal operation of Federal Rules of Civil Procedure. So were I to come down with that kind of decision, I'd likely give him the ability to subpoena the information to amend his complaint anyway if I thought that there was a valid complaint with that information in hand.

So I don't think it's going to make any difference.

So you can set the discovery date as -- or the return date as a -- the reasonable date that you would normally for any other document subpoena. Show it to Mr. Huff before you send it out.

If there's something different from it than what Mr. Lavery's represented, which I'm sure there won't be, feel free to come back in. Won't bother me. You know, it's just

another trip for everybody.

And if you do have to come in on anything else, call in if you want for the status rather than taking the trip if you're -- you're up in the suburbs, aren't you, or are you downtown?

MR. HUFF: No, I'm downtown.

THE COURT: Oh, you're both downtown. Never mind. You both can walk --

MR. LAVERY: I used to be in the suburbs.

THE COURT: Okay. Maybe that's what I understood. But you both can walk over.

All right. So the motion to -- partial lift of the discovery stay will be granted consistent with -- for the reasons stated on the record and within the limits stated on the record today.

And then otherwise, you're just waiting for me to rule on the motion to dismiss. I don't think we have a date otherwise in this case. And depending on how I rule, if it's a grant of the motion to dismiss, the case is over. If it's a denial, I'll have you back in for a status so we can set a discovery schedule.

MR. HUFF: Very good.

THE COURT: Okay. Thank you.

MR. HUFF: Thank you, Judge.

(Concluded at 9:30 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

*/s/ LAURA R. RENKE* *July 24, 2013*

LAURA R. RENKE, CSR, RDR, CRR
Official Court Reporter